**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THE TREEHOUSE HOURLY CHILD CARE, LLC, doing business as The Treehouse Child Care Center, and MANDY BURT,

Plaintiffs,

5:26-cv-754 (ECC/ML)

v.

WATERTOWN CITY SCHOOL DISTRICT, DR. LARRY SCHMIEGEL, individually and in his official capacity as Superintendent, LYNN GAFFNEY, individually and in her official capacity as Assistant Superintendent for Curriculum and Instruction, ELIZABETH MAURER, individually and in her official capacity as Prekindergarten Administrator, and LAURA PAYNE BOURCY,

Defendants.

---

Chad A. Davenport, Esq., *for Plaintiffs*
Sarah N. Rodman, Esq., *for Defendant Laura Payne Bourcy*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

Plaintiffs The Treehouse Hourly Child Care, LLC d/b/a The Treehouse Child Care Center (Treehouse) and Mandy Burt bring this action against Defendants Watertown City School District (the District), Dr. Larry Schmiegel, Lynn Gaffney, Elizabeth Maurer, and Laura Payne Bourcy. *See generally* Dkt. No. 17 (Amended Complaint). The Amended Complaint asserts claims for violation of Plaintiffs' First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, among others, related to an alleged campaign of retaliation against Plaintiffs for protected speech and advocacy on behalf of disabled preschool students. *See id.* Presently before the Court is Defendant Laura Payne Bourcy's motion to dismiss the Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6). Dkt. No. 24. The motion is fully briefed. Dkt. Nos. 26, 29. For the following reasons, Ms. Bourcy's motion to dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

Ms. Burt is the Chief Executive Officer of Treehouse, a child care center that has provided Universal Pre-Kindergarten ("UPK") services in partnership with the District since approximately 2015. Dkt. No. 17 ¶¶ 2, 11. At its peak, Treehouse served approximately 73 preschool students through the District's UPK program, operating three classrooms at Ohio Street Elementary School and additional classrooms at its own facility. *Id.* at ¶¶ 11, 21-22. Treehouse provided these services pursuant to annual "UPK Services Agreements" between Treehouse and the District. *Id.* at ¶ 22. In the 2023-2024 request for proposal (RFP) evaluation, Treehouse received a score of 100%, the highest score of any community-based organization (CBO) evaluated by the District. *Id.* at ¶ 23.

### A. Plaintiffs' Advocacy Efforts

On October 12, 2023, Ms. Burt met with District representatives to "discuss the need for additional special education supports for preschool students with disabilities, specifically for the inclusion of 1:1 aides on students' Individualized Education Programs ('IEPs') where educationally appropriate, and for the provision of such supports where IEPs already called for them." *Id.* at ¶ 26. At this meeting, District officials told Treehouse and other CBOs that "they would 'never' receive 1:1 aides for their preschool students with disabilities." *Id.* at ¶ 27. On October 16, 2023, Ms. Burt sent a written communication to Defendant Maurer, Chair of the

[1] These facts, which are limited to those relevant to the claims asserted against Ms. Bourcy, are drawn from the Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

District's Committee on Preschool Special Education, and the county representative "continuing to advocate for 1:1 aides," but her advocacy was "disregarded." *Id.* at ¶ 28.

In the spring of 2024, Ms. Burt was informed that Treehouse was "losing a classroom at Ohio Street Elementary to make room for a new CBO, Little Lukes, an out-of-county provider." *Id.* at ¶ 34. At this meeting, Ms. Maurer told Ms. Burt: "You should be happy, you were the biggest advocate for more special education supports." *Id.* at ¶ 35. Treehouse was never given the opportunity to submit a proposal for the special education program that Little Lukes was brought in to provide. *Id.* at ¶ 37.

Beginning in early 2025, Treehouse and two other CBOs, CAPC and the Arc, "collectively advocated for transparency in the District's UPK administration and for adequate reimbursement of the providers serving the District's preschool children." *Id.* at ¶ 39. CAPC and other CBOs, including Treehouse, presented "several grievances to the Board of Education," including inadequate funding, unethical partnerships, poor leadership and special education failures. *Id.* at ¶ 40.

On April 14, 2025, Dr. Schmiegel, the District Superintendent, presented a proposed budget to the Board of Education (the Board) "that included $1.2 million to establish district-run preschool classrooms, which would take classrooms from CBOs, while refusing to increase CBO reimbursement rates." *Id.* at ¶ 41. On April 16, 2025, Ms. Burt emailed the Board to express her concerns about the proposed budget's impact on UPK providers and the children they serve. *Id.* at ¶ 42. In response, Superintendent Schmiegel directed that all CBO communications go through District administration. *Id.* at ¶ 43. On April 16, Superintendent Schmiegel sent Treehouse a letter "reprimanding it for including other CBOs in its advocacy communications." *Id.* at ¶ 44.

Ms. Burt spoke at a public Board meeting on May 6, 2025, criticizing the budget's treatment of UPK funding "and its impact on community-based child care providers." *Id.* at ¶ 45. On May 13 and 15, she appeared on "the Jeff Graham radio show to advocate for a 'No' vote on the school budget, explaining how the budget prioritized district-run programs over community partnerships." *Id.* at ¶ 46. On May 16, Treehouse published a post on its Facebook page "refuting misinformation . . . regarding the RFP process and CBO funding." *Id.* at ¶ 47.

**B. 2025-2026 RFP Process**

The District retained LPB Consulting, a firm operated by Ms. Bourcy, to evaluate CBO proposals under the 2025-2026 RFP process. *Id.* at ¶¶ 17, 49. The Amended Complaint alleges that, although Ms. Bourcy was a "purportedly independent evaluator," in reality she "functioned as an arm of the District" and performed the "scoring evaluation at the District's direction." *Id.* At a February 27, 2025 Q&A session, Ms. Bourcy "us[ed] the pronoun 'we' when referring to District decisions" and "exercis[ed] apparent authority to reject CBO concerns." *Id.* at ¶ 49.

Plaintiffs received the "scoring documents" related to the RFP process from the District through FOIL in September 2025. *Id.* at ¶ 50. Under the "District's Mission" category of the scoring documents for Treehouse, "the evaluator deducted a point because Burt had 'taken multiple actions to discredit the district,' including posting negative comments on Facebook, appearing on two radio shows, and urging voters to reject the school budget." *Id.* at ¶ 51. Plaintiffs further allege that Treehouse was "penalized for pretextual and fabricated reasons unrelated to the published RFP scoring criteria," such as "employing a behavioral specialist whom the evaluator characterized as lacking credentials," that its "application [wa]s heavy in the number of non-classroom-based staff," and receiving zero points in the budget section despite submitting a "compliant budget narrative." *See id.* at ¶ 52. The only three CBOs "that lost points for reasons outside the published RFP scoring criteria" were those that had "publicly criticized the District."

*Id.* at ¶ 53. Little Lukes, by contrast, received a perfect score of 100%, was assisted by District personnel in preparing its proposal, and was permitted to "receive both county and district funding." *Id.* at ¶ 56.

Plaintiffs allege that a "separate internal scoring document" listed Treehouse's score at 93%, while the "official" score sheet had a score of 83%. *Id.* at ¶ 57. Although the Amended Complaint does not attribute this change in score to Ms. Bourcy, Plaintiffs allege that the discrepancy "supports the inference that The Treehouse's score was intentionally altered after the initial evaluation to ensure that the District could publicly announce The Treehouse as the lowest-scoring program and use that designation as a pretext for slot reductions and eviction from District facilities." *Id.* at ¶ 57.

**C. Treehouse's Loss of UPK Slot Allocations**

On May 28, 2025, Defendants Maurer and Gaffney told Ms. Burt that Treehouse "would not be partnering with the District at all for the 2025-2026 school year because it had received 'the lowest score'" and that Ms. Burt should not "bother attending the allocation meeting." *Id.* at ¶ 59.[2] On June 23, the Board directed Superintendent Schmiegel to restore the partnership with Treehouse and not cut any of its classrooms, but Superintendent Schmiegel "defied that directive." *Id.* at ¶ 60.

On August 5, 2025, the Board "voted on the CBO partnerships" and "gave control" to Superintendent Schmiegel to "determine the slot allocations for all CBOs." *Id.* at ¶ 62. At this meeting, the CBOs "were read aloud in order from highest-scoring to lowest-scoring, and The

[2] The Amended Complaint does not allege specifically when Ms. Bourcy completed her evaluation of Treehouse's or any other CBO's proposal. Because Ms. Bourcy's evaluation reflects awareness of Ms. Burt's social media posts and radio appearances which occurred by May 16 and because Ms. Burt was told Treehouse had received the lowest score on May 28, the Court infers that Ms. Bourcy's evaluation was completed sometime between these two dates. *See id.* at ¶¶ 46-47, 59.

Treehouse was publicly announced as the lowest-scoring organization." *Id.* As a "result of Defendants' manipulated scoring process," Plaintiffs' UPK slot allocation for the 2025-2026 school years was reduced from 73 to 19, a 74% reduction, and Plaintiffs "were evicted from all classrooms at Ohio Street Elementary School." *Id.* at ¶ 65.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

As against Ms. Bourcy, the Amended Complaint asserts Section 1983 claims for (1) retaliation in violation of the First Amendment (first cause of action), (2) violation of Plaintiffs' equal protection rights under the Fourteenth Amendment based on class-of-one and/or selective enforcement theories (second cause of action), and (3) violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment (third cause of action). Dkt. No. 17 ¶¶ 92-126. Ms. Bourcy moves to dismiss all claims against her. *See* Dkt. No. 24.

In response to Ms. Bourcy's motion, Plaintiffs "do not oppose dismissal," as against Ms. Bourcy only, of the equal protection claim premised on a class-of-one theory and of the procedural

due process claim. Dkt. No. 26 at 3.[3] The Court therefore grants Ms. Bourcy's motion to dismiss the equal protection claim to the extent it is premised on a class-of-one theory and the procedural due process claim. Two claims therefore remain for adjudication on Ms. Bourcy's motion: Plaintiffs' First Amendment retaliation claim and Fourteenth Amendment selective enforcement equal protection claim.

### A. Color of State Law

Ms. Bourcy first moves to dismiss all claims against her on the ground that the Amended Complaint does not plausibly allege that she acted under color of state law. Dkt. No. 24-1 at 10-13. Plaintiffs respond that the Amended Complaint plausibly alleges that Ms. Bourcy engaged in joint action with the District such that her conduct is fairly attributable to the state. Dkt. No. 26 at 5-6.

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show that the defendant acted under color of state law. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). Although private parties generally are not state actors, their conduct can be attributed to the State for Section 1983 purposes if (1) "the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test')"; (2) the state "provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test')"; or (3) the entity "has been delegated a public function by the state ('the public function test')." *Fabrikant*, 691 F.3d at 207

[3] Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

(quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citations omitted).

Here, Plaintiffs invoke the joint action test, arguing that Ms. Bourcy was a "willful participant in joint action with the State or its agents." *See Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [State actors]." *See id.* (citations omitted). To establish joint action, a plaintiff must ultimately show that the private actor and the state officials "shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Id.* (citations omitted).

"When analyzing allegations of state action, the Court must begin 'by identifying the specific conduct of which the plaintiff complains.'" *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 113 (N.D.N.Y. 2023) (citations omitted). Here, setting aside the Amended Complaint's legal conclusions, the alleged conduct of Ms. Bourcy underlying Plaintiffs' claims against her is that Ms. Bourcy, through her consulting firm, was retained by the District to evaluate CBO proposals for the 2025-2026 RFP process and that, in performing that evaluation, Ms. Bourcy penalized Treehouse for protected speech, for false and pretextual reasons, and on "extra-rubric grounds." *See* Dkt. No. 17 ¶¶ 17, 49, 51-53. The Amended Complaint further alleges that Ms. Bourcy's scoring decisions were made "at the District's direction," *see id.* at ¶¶ 4, 17, and that she was "caused to score The Treehouse on the basis of representations made by District officials rather than on the published RFP scoring criteria," *id.* at ¶ 58. Finally, Plaintiffs allege that Ms. Bourcy

used the pronoun "we" when "referring to District decisions" at a February 27, 2025 Q&A session, which appears to have occurred prior to her evaluation of the proposals at issue. *See supra* at 5 n.2.

Taking these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, at this stage of the proceedings the Court cannot conclude as a matter of law that Ms. Bourcy was not engaged in joint action with state actors. Although somewhat sparse, Plaintiffs' factual allegations plausibly suggest that Ms. Bourcy's evaluation and scoring decisions were not the product of her own independent judgment, but rather influenced or directed by District officials by a common plan or prearrangement. This inference is buttressed by Ms. Bourcy's alleged use of the pronoun "we" at a Q&A session prior to her evaluation, thereby identifying herself and her decision-making with the District.

Ms. Bourcy relies on *Levin v. City of Buffalo*, 179 F.4th 132 (2d Cir. 2026), in which the Second Circuit affirmed the grant of summary judgment to a private company for lack of state action. In *Levin*, the private company's involvement was "limited to the physical demolition" of the building at issue "pursuant to a contract with the City that was awarded" through a bidding process. *Id.* at 142. The private company "played no role in deciding whether the demolition should take place" and therefore was not a state actor which could be held liable under Section 1983. *Id.* Ms. Bourcy argues that she is like the private contractor in *Levin* who "performed work pursuant to a municipal contract but did not participate in the [challenged] governmental decision." Dkt. No. 24-1 at 11. But Plaintiffs allege not just that Ms. Bourcy performed work pursuant to a municipal contract but also that her work was directed and influenced by state actors, and *Levin* is therefore distinguishable.[4]

[4] Ms. Bourcy similarly relies on *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802 (2019), for the proposition that "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the

Accordingly, Ms. Bourcy's motion to dismiss for failure to allege state action is denied.

**B. First Amendment Retaliation**

Ms. Bourcy moves to dismiss Plaintiffs' First Amendment retaliation claim on the grounds that (1) the adverse actions identified in the cause of action are not attributable to her; (2) even assuming the RFP scoring itself constitutes an adverse action, Plaintiffs do not plausibly allege it caused their injuries; and (3) "much of the speech at issue" arose directly from Treehouse's "contractual and economical relationship" with the District and is not necessarily protected. Dkt. No. 24-1 at 14-18. Plaintiffs respond that Ms. Burt's speech addressed matters of public concern, Ms. Bourcy's RFP scoring is itself an adverse action, and the issue of causation is a merits and damages question. Dkt. No. 26 at 6-8.

To state a First Amendment retaliation claim, a plaintiff must allege that (1) her "speech or conduct was protected by the First Amendment," (2) the defendant "took an adverse action against [her]," and (3) there was a "causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Centr. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)). An adverse action in this context is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Id.* at 273 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)).

With regard to the first element, Ms. Bourcy argues that "substantial portions" of Ms. Burt's speech "arose directly from The Treehouse's contractual and economic relationship" with the District and therefore "does not necessarily acquire First Amendment protection." Dkt. No. 24-

---

private entity is performing a traditional, exclusive public function." 587 U.S. at 814; *see* Dkt. No. 24-1 at 10-11. But again, Plaintiffs here allege more than mere contracting between government and a private actor.

1 at 17-18. But this qualified argument does not establish, as a matter of law, that none of Plaintiffs' alleged speech is protected under the First Amendment, and Ms. Bourcy's motion elsewhere assumes that "at least some of Burt's challenged speech was protected." Dkt. No. 24-1 at 14. Therefore, for purposes of this motion, the Court concludes that Plaintiffs have plausibly alleged that they engaged in protected speech. *See* Dkt. No. 17 ¶¶ 48 (alleging that Ms. Burt's speech addressed "the allocation of public education funds, the treatment of community-based child care providers, the rights of preschool students with disabilities, and the quality of preschool special education services"), 93-95.

As framed by Plaintiffs, the adverse action attributable to Ms. Bourcy is her "retaliatory scoring." Dkt. No. 26 at 7. Although Ms. Bourcy suggests in her reply that Plaintiffs could not have been deterred by the RFP scoring data which they did not see until September 2025, Dkt. No. 29 at 10, she cites no authority for the proposition that an adverse scoring decision on a proposal cannot constitute an adverse action for First Amendment retaliation purposes or that such scoring data must be known by the plaintiff before the relevant governmental entity makes its selection. Ms. Bourcy therefore is not entitled to dismissal on this basis.

Finally, Ms. Bourcy argues that Plaintiffs have not sufficiently alleged that the RFP scoring "*caused* the subsequent governmental deprivations for which Plaintiffs seek substantial damages," because they do not allege, for example, what Treehouse's overall score would have been absent the retaliatory deduction, how that may have changed Treehouse's relative ranking, or whether the District was required to accept Ms. Bourcy's scoring judgments. Dkt. No. 24-1 at 15-16. The Court agrees with Plaintiffs that this argument is relevant either to a potential affirmative defense or to what damages, if any, Plaintiffs suffered as a proximate result of the allegedly retaliatory scoring, neither of which is suitable to resolution on a motion to dismiss.

Accordingly, Ms. Bourcy's motion to dismiss the First Amendment retaliation claim is denied.

**C. Equal Protection**

Ms. Bourcy moves to dismiss Plaintiffs' equal protection claim for failure to plead adequate similarly situated comparators. Dkt. No. 24-1 at 20-22.

To prevail on an equal protection claim based on a theory of selective enforcement of the law, a plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). This type of equal protection claim, which was first articulated in *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), requires proof of both "disparate treatment and impermissible motivation." *Id.* (citation omitted). A *LeClair* selective enforcement claims requires that the plaintiff's and comparator's circumstances "bear a reasonably close resemblance," although they need not be "identical." *Id.* at 93, 96 ("A plaintiff can prevail by showing that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (citation and internal quotation marks omitted)).

Here, Ms. Bourcy contends that Plaintiffs do not plead adequate comparators for a selective enforcement claim because they do not allege that the comparators were similarly situated with respect to the "particular scoring criteria Bourcy allegedly evaluated differently," such as the credentials of a behavioral specialist, number of non-classroom staff, or budget narrative. Dkt. No. 24-1 at 20-21. Plaintiffs respond that their claim does not require a "criterion-by-criterion comparison" of the CBOs' proposals and that the materially similar comparators "are the other

longstanding UPK providers who competed under the same RFP for the same pool of slots and classroom space" but who were not penalized with "extra-rubric deductions" if they had not "publicly criticized the District." Dkt. No. 26 at 9.

The Court concludes that Plaintiffs have plausibly alleged the existence of at least one comparator whose circumstances bear a "reasonably close resemblance" to the Treehouse's but did not publicly criticize the District and did not receive "extra-rubric" deductions. Plaintiffs allege that the Watertown Family YMCA, like Treehouse, held the requisite licensure and certifications, provided UPK instruction to District preschool students pursuant to annual UPK Services Agreements, submitted a 2025-2026 RFP proposal, competed for the same pool of UPK slots and classroom space, requested a comparable number of slots (63), operated a comparable number of classrooms with District buildings (two), and described itself as a "long-standing partner[]." Dkt. No. 17 ¶¶ 105-08. The Amended Complaint alleges that the YMCA "did not publicly criticize the District" and was "not penalized on any extra-rubric ground, retained its in-District classrooms, and received favorable treatment." *Id.* ¶ 110. Recognizing that there is "no precise formula to determine whether an individual is similarly situated to comparators" and that the question of similarity is generally a "fact-intensive inquiry," *Hu*, 927 F.3d at 97, Plaintiffs' allegations regarding the material similarity of the YMCA's proposal and differential treatment are sufficient to survive Ms. Bourcy's motion to dismiss.

Accordingly, the motion to dismiss Plaintiffs' selective-enforcement equal protection claim is denied.[5]

[5] Ms. Bourcy requests, if any claim against her survives dismissal, that the Court "make clear that Bourcy may be held responsible only for constitutional injuries and damages sufficiently attributable to her own conduct . . . and not for the independent acts of other Defendants." Dkt. No. 24-1 at 26-27. Questions of damages, causation, and apportionment will be resolved as necessary at the appropriate juncture.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Laura Payne Bourcy's motion to dismiss, Dkt. No. 24, is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Plaintiffs' Section 1983 claim for violation of the Fourteenth Amendment's Equal Protection Clause (second cause of action) against Ms. Bourcy is **DISMISSED with prejudice** to the extent it is premised on a class-of-one theory; and it is further

**ORDERED** that Plaintiffs' Section 1983 claim for violation of the Fourteenth Amendment's Due Process Clause (third cause of action) against Ms. Bourcy is **DISMISSED with prejudice**; and it is further

**ORDERED** that Ms. Bourcy's motion to dismiss is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: November 25, 2026

Elizabeth C. Coombe
U.S. District Judge